GENTILE CRISTALLI
MILLER ARMENI SAVARESE
VINCENT SAVARESE III
Nevada Bar No. 2467
Email: vsavarese@gcmaslaw.com
LAUREN E. PAGLINI
Nevada Bar No. 14254
Email: lpaglini@gcmaslaw.com
410 South Rampart Boulevard, Suite 420
Las Vegas, Nevada 89145
Tel: (702) 880-0000
Fax: (702) 779-9709
*Attorneys for Defendant,*
*Atef Salami Nemer Hirchedd*

## UNITED STATE DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:99-cr-309-KJD-3 |
| Plaintiff, | |
| vs. | **AMENDED PETITION FOR WRIT OF ERROR *CORAM NOBIS*** |
| ATEF SALAMI NEMER HIRCHEDD, | |
| Defendant. | **(Expedited Consideration Requested)** |

COMES NOW the Defendant, ATEF SALAMI NEMER HIRCHEDD ("Petitioner Nemer," "Mr. Nemer," "the Petitioner"), by and through his attorneys, VINCENT SAVARESE III, ESQ. and LAUREN E. PAGLINI, ESQ., of the law firm of GENTILE CRISTALLI MILLER ARMENI SAVARESE, and pursuant to the Sixth Amendment to the Constitution of the United States and Title 28, United States Code ("U.S.C."), Section 1651(a), hereby respectfully submits this Amended Petition for Writ of Error *Coram Nobis* seeking to vacate Petitioner's conviction in this matter of the offense of Conspiracy to Possess and Pass Counterfeit Obligations of the United States With Intent to Defraud in violation of 18 U.S.C § 371 (§ 472). Petitioner respectfully requests that this Court grant this Amended Petition in order to correct a fundamental error vitiating the legal integrity of that conviction.

…

…

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1 of 21

THIS AMENDED PETITION is made and based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, the exhibits appended hereto, and any evidence and oral argument that the Court may require at hearing.

DATED this _____ day of October, 2017.

GENTILE CRISTALLI
MILLER ARMENI SAVARESE

VINCENT SAVARESE III
Nevada Bar No. 2467
LAUREN E. PAGLINI
Nevada Bar No. 14254
410 South Rampart Blvd., Suite 420
Las Vegas, Nevada  89145
Tel: (702) 880-0000
*Attorneys for Defendant,*
*Atef Salami Nemer Hirchedd*

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.

### STATEMENT OF RELEVANT FACTS

Petitioner Nemer, a citizen of Venezuela, was born in Swedia, Syria and emigrated as a child, with his family, to Barinas, Venezuela, where, as an adult, he ultimately pursued a career in business. Declaration of Atef Salami Nemer Hirchedd, a true and correct copy of which is appended hereto and incorporated herein by reference as **Exhibit A** ¶¶ 3, 4. He began his career as an entrepreneur by founding a successful furniture store in that city. *Id.* at ¶ 5. He thereafter embarked upon the business of real estate development; building homes, shopping centers, and hotels, and started a small airline company there. *Id.* at ¶ 6. Starting in or around 1993, Mr. Nemer opened a chain of automobile dealerships throughout Venezuela, and thereupon began to regularly travel to the United States—specifically Miami, Florida—to invest millions of dollars in American motor vehicles for re-sale in that country; to purchase American aircraft for his airline company; and to invest millions of dollars in American real estate. **Exhibit A** ¶¶ 7-9.

In July 1999, Mr. Nemer and his wife traveled to Las Vegas, Nevada, together with a

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

group of other Venezuelan businessmen, including his co-defendants in this case, Orlando Sanchez Medina ("Mr. Medina") and Kamilo Yuseff Mousali ("Mr. Mousali") and stayed at the Mirage Hotel and Casino. **Exhibit A** ¶ 10. Prior to this trip, Petitioner obtained a sum of United States currency from a Venezuelan currency exchange. *Id.* at ¶ 11. And on or about July 26, 1999, Petitioner was arrested on the allegation that some of the notes with which he was playing slot machines at the Mirage were counterfeit. *Id.* at ¶ 12.

On August 4, 1999, the above-captioned Indictment was filed in this Court, charging Mr. Nemer (together with co-defendants Kamilo Yuseff Mousali and Orlando Sanchez Medina), in Count One, with Conspiracy to Possess and Pass Counterfeit Obligations of the United States With Intent to Defraud in violation of 18 U.S.C. § 371. *Id.* at ¶ 13; Criminal Indictment, a true and correct copy of which is appended hereto and incorporated herein by reference as **Exhibit B**. Count Two set forth a Forfeiture allegation pursuant to 18 U.S.C. § 982. *Id.*

Mr. Nemer retained duly-licensed Las Vegas attorney Kirk Kennedy, Esq. (hereinafter "Mr. Kennedy") to represent him. **Exhibit A** ¶ 14; Declaration of Kirk Kennedy, Esq., a true and correct copy of which is appended hereto and incorporated herein by reference as **Exhibit C** ¶ 4.

Mr. Kennedy knew that Mr. Nemer was a citizen of Venezuela and a businessman whose livelihood involved regular travel to the United States for business purposes. *Id.* at ¶ 5.

As an international businessman who regularly travels to the United States, Petitioner was gravely concerned about the negative impact that the Indictment may have on his immigration status; ability to travel to this country; and, consequently, his livelihood. **Exhibit A** ¶ ¶ 16-17, 50. And it was critical to him that the disposition of his Indictment have no adverse impact on his immigration status or ability to enter the United States. **Exhibit A** ¶ ¶ 16-17.

From the outset, and at Mr. Nemer's request, Mr. Kennedy prepared Petitioner's case as if the matter were going to proceed to trial. *Id.* at ¶ 15; **Exhibit C** ¶ 7. The anticipated trial defense contemplated that the Venezuelan money supply had become contemporaneously contaminated with counterfeit United States currency by drug traffickers, and that Mr. Nemer had been unknowingly provided with some counterfeit United States currency by the Venezuelan currency exchange from which he had obtained American money prior to his trip to Las Vegas in

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

1   July 1999. **Exhibit C ¶ 8.**

2       However, the United States Attorney's Office ultimately communicated to Mr. Kennedy

3   an offer to resolve the case by plea agreement, pursuant to which the government would not

4   recommend that Petitioner be required to serve a sentence of imprisonment, and pursuant to

5   which Mr. Nemer would enter a plea of guilty to Count One of the Indictment in which he was

6   charged with  Conspiracy to Possess and Pass Counterfeit Obligations of the United States With

7   Intent to Defraud in violation of 18 U.S.C. § 371, pay a $10,000 fine, assume joint and several

8   responsibility, together with his co-defendants, to pay restitution to the Mirage Hotel and Casino

9   in the amount of $3,400, and receive credit for time served. *Id.* at ¶ 9.

10      When Mr. Kennedy presented the proposed guilty plea agreement to Mr. Nemer,

11  Petitioner explained to the attorney that it was of paramount importance to him, in determining

12  whether or not to accept the deal, that a guilty plea not affect his right to travel to the United

13  States, and that he would elect to try the case if the proposed guilty plea would implicate adverse

14  immigration consequences or entry restriction. **Exhibit A ¶ ¶** 18-21, 51; **Exhibit C ¶** 10.

15      Without consulting an immigration attorney, Mr. Kennedy – who did not practice in the

16  area of immigration law – affirmatively misadvised Mr. Nemer that the plea would have no

17  adverse impact on his immigration status or ability to travel to the United States. **Exhibit A ¶ ¶**

18  22-23; **Exhibit C ¶ ¶** 11-12. This advice was based on Mr. Kennedy's erroneous belief that the

19  proposed offense of conviction (Conspiracy to Possess and Pass Counterfeit Obligations of the

20  United States With Intent to Defraud) was not deemed by immigration authorities to be a crime

21  of moral turpitude subjecting Mr. Nemer to exclusion from the United States. **Exhibit C ¶** 13.

22      Based on Mr. Kennedy's erroneous advice and assurances, Mr. Nemer – who had no

23  prior criminal history (and who has no subsequent criminal history) – accepted the terms of the

24  plea agreement and thereupon pleaded guilty to Count One of the Indictment charging him with

25  Conspiracy to Possess and Pass Counterfeit Obligations of the United States With Intent to

26  Defraud in violation of 18 U.S.C. § 371. **Exhibit A ¶** 24, 49; **Exhibit C ¶** 6, 14. And on October

27  27, 2000, he was adjudged guilty of that offense. **Exhibit C ¶** 15; Judgment in a Criminal Case, a

28  true and correct copy of which is appended hereto and incorporated herein by reference as

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

1    **Exhibit D**. Mr. Nemer was ordered to pay a fine in the amount of $10,000; agreed to forfeit a

2    large sum of genuine United States currency seized from his person and his hotel room by

3    Mirage security officers; and was sentenced to "time served." **Exhibit A ¶ 25**; **Exhibit D**. The

4    co-defendants entered into similar guilty plea agreements, and all three defendants were ordered

5    to make restitution jointly and severally in the amount of $3,400 to the Mirage Hotel and Casino.

6    **Exhibit A ¶ 26**; **Exhibit D**.

7          Notwithstanding his conviction, nine (9) months later, on July 31, 2001, the United States

8    Embassy in Venezuela approved Mr. Nemer for a ten (10) year visa allowing him to travel to and

9    from the United States. **Exhibit A ¶ 27**. And from 2001 to 2011 – during the pendency of that

10   visa – Mr. Nemer entered the United States over one hundred (100) times without incident. *Id.* at

11   ¶ 28. Mr. Nemer accordingly assumed that Mr. Kennedy's assurances were thereby confirmed,

12   having had no occasion to suspect otherwise. *Id.* at ¶ 29.

13         Since then, during regular business trips to the United States, Petitioner has purchased

14   hundreds of American motor vehicles for re-sale at his automobile dealerships in Venezuela; a

15   Beechcraft 2007 King Air 350 airplane for $5,513,632; a Hawker 400XP airplane for

16   $6,111,520; commercial real estate in Florida; and $7,000,000 worth of condominiums in Miami.

17   **Exhibit A ¶ 30**.

18         On or about October 26, 2011, Mr. Nemer attempted to renew his visa for another ten

19   (10) years. *Id.* at ¶ 31. However, Petitioner's application for renewal was denied, and he was

20   informed – for the first time – by immigration authorities that he was ineligible for admission to

21   the United States because of his conviction in the instant case. **Exhibit A ¶ 32**.

22         Mr. Nemer thereupon retained Don Chairez, Esq. ("Mr. Chairez") – a duly-licensed

23   attorney in both Nevada and California and who concentrates in the practice of immigration law

24   – to represent him in an effort to remedy his immigration status. *Id.* at ¶ 33; Declaration of Don

25   Chairez, Esq., a true and correct copy of which is appended hereto and incorporated herein by

26   reference as **Exhibit E ¶ 5**. Mr. Nemer explained all of the foregoing historical facts and

27   circumstances to Mr. Chairez, and ascertained, by and through explanation by Mr. Chairez, that

28   Mr. Kennedy had misadvised him with respect to the adverse immigration consequences of his

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

5 of 21

1    guilty plea in this case. **Exhibit A** ¶ 33; **Exhibit E** ¶ 6-7.

2        Mr. Chairez did not advise Petitioner of the statutory availability of an application for

3 judicial *coram nobis* relief from his underlying conviction under such circumstances on the

4 grounds asserted herein or recommend that Mr. Nemer promptly pursue a petition for such relief.

5 **Exhibit A** ¶¶ 33-34; **Exhibit E** ¶ 8. This despite the fact that *coram nobis* relief was the only

6 available vehicle by which to seek a permanent solution to Petitioner's problem, which Mr.

7 Chairez belatedly recognized by ultimately informing Petitioner of the availability of such an

8 avenue of relief and filing such a petition, albeit not until three-and-a-half years later. **Exhibit A**

9 ¶ 44; **Exhibit E** ¶¶ 5, 8, 17-18. Instead, Mr. Chairez advised Petitioner to pursue administrative

10 relief by seeking a "waiver" of his inadmissible status, which would allow Mr. Nemer to only

11 temporarily enter and continue to conduct business in the United States, by filing an I-192

12 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of

13 the Immigration and Nationality Act. **Exhibit A** ¶ 35; **Exhibit E** ¶ 9. And Mr. Nemer was

14 thereby led to believe, in good faith, that this temporary, administrative "waiver" process was the

15 exclusive legal remedy available to him. **Exhibit A** ¶ 36.

16        Accordingly, on or about June 27, 2012 – based on the advice and with the assistance of

17 Mr. Chairez – Mr. Nemer filed for a "waiver" by submitting an I-192 Application for Advance

18 Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and

19 Nationality Act to the American Embassy in Caracas, Venezuela. **Exhibit A** ¶ 37; **Exhibit E** ¶

20 11.

21        Months passed and neither Mr. Nemer nor Mr. Chairez received any response from the

22 Caracas Embassy to the waiver application. And therefore, concerned about his inability to travel

23 to the United States and its effect on his livelihood, Mr. Nemer requested that Mr. Chairez re-

24 filed the I-192 Application for Advance Permission to Enter as Non Immigrant on or about

25 March 12, 2013, and Mr. Chairez did so. **Exhibit A** ¶ 38-39; **Exhibit E** ¶ 12-13.

26        On June 13, 2013, after a rather lengthy and uncertain process, Petitioner was granted a

27 waiver and afforded a visa to enter the United States for approximately eleven (11) months,

28 which expired on May 9, 2014. **Exhibit A** ¶ 40; **Exhibit E** ¶ 14.

Gentile Cristalli
er Armeni Savarese
Attorneys At Law
S. Rampart Blvd. #420
Vegas, Nevada 89145
(702) 880-0000

1    On or about September 12, 2014 – again based on the advice and with the assistance of

2    Mr. Chairez – Petitioner again sought temporary relief through the administrative "waiver"

3    process, by filing yet another I-192 Application for Advance Permission to Enter as Non

4    Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the

5    Embassy in Caracas, Venezuela. **Exhibit A** ¶ 41; **Exhibit E** ¶ 15. And at the time, Petitioner still

6    believed in good faith that this administrative "waiver" process was the exclusive remedy

7    available to him. **Exhibit A** ¶ 42.

8    On or about October 10, 2015, Mr. Nemer was granted another waiver and issued a visa

9    to enter the United States for approximately two (2) years. **Exhibit A** ¶ 43; **Exhibit E** ¶ 16.

10    In response to Mr. Nemer's expression of great frustration with the uncertainty and

11    inconvenience associated with the administrative waiver process, Mr. Chairez thereupon

12    belatedly advised Mr. Nemer – for the first time – of the availability of the judicial *coram nobis*

13    process, pursuant to which he could attack his underlying conviction based on Mr. Kennedy

14    having affirmatively misled him regarding the adverse immigration consequences of his guilty

15    plea. **Exhibit A** ¶ 44; **Exhibit E** ¶ 17. And Petitioner thereupon immediately retained Mr.

16    Chairez to file the appropriate petition seeking that relief. **Exhibit A** ¶ 44; **Exhibit E** ¶ 17.

17    On November 29, 2015, Mr. Chairez filed a Petition for Writ of Error *Coram Nobis* in

18    this Court on behalf of Mr. Nemer assigning such grounds. **Exhibit E** ¶ 18; Petition for Writ of

19    Error *Coram Nobis,* a true and correct copy of which is appended hereto and incorporated herein

20    by reference as **Exhibit F**.

21    However, unbeknownst to Mr. Nemer, Mr. Chairez erroneously filed the petition under a

22    new (civil) case number rather than in the above-entitled criminal case. *See* Docket, Case No.:

23    2:15-cv-2206-KJD-NJK. The government thereupon moved to correct the docketing statement,

24    which motion was granted by this Court. *Id.*

25    Unbeknownst to Mr. Nemer, Mr. Chairez did not thereafter correctly file the same

26    petition under the appropriate case number in the instant criminal case until April 25, 2016.

27    **Exhibit A** ¶ 46; **Exhibit E** ¶ 20; Docket, Case No.: 2:99-cr-00309-KJD. And unbeknownst to

28    Mr. Nemer, Mr. Chairez failed to serve the government with that petition. **Exhibit A** ¶ 47;

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1    **Exhibit E** ¶ 21. And unbeknownst to Mr. Nemer, as a result, the petition has lain dormant for

2    eighteen (18) months without response or proceedings thereon. **Exhibit A** ¶ 47; **Exhibit E** ¶ 21.

3         Petitioner's current visa expired on September 29, 2017. **Exhibit A** ¶ 48. And

4    accordingly, Mr. Nemer must leave the United States by March 2018, and in the interim, may not

5    leave the country and thereafter re-enter. **Exhibit A** ¶ 48.

6         Mr. Nemer has now retained the undersigned counsel to pursue *coram nobis* relief on his

7    behalf and bring this Amended Petition for Writ of Error *Coram Nobis* pursuant to 28 U.S.C. §

8    1651(a), expedited consideration of which is hereby respectfully requested under the

9    circumstances.

10                                              **2.**

11                                          **ARGUMENT**

12   **PETITIONER'S CONVICTION SHOULD BE VACATED PURSUANT TO A WRIT OF
     ERROR *CORAM NOBIS* IN ORDER TO CORRECT A FUNDAMENTAL ERROR**

13   **VITIATING THE CONSTITUTIONAL INTEGRITY OF HIS GUILTY PLEA.**

14        Federal district courts have the power to issue the writ of error *coram nobis* pursuant to

15   the All Writs Act, codified at 28 U.S.C. § 1651. *United States v. Morgan,* 346 U.S. 502, 506-07

16   (1954). "Through a writ of error *coram nobis*, the federal judge who imposed a sentence has the

17   discretionary power to set aside an underlying conviction and sentence which, for a valid reason,

18   should have never been entered." *United States v. Hansen,* 906 F.Supp. 688, 692 (D.D.C. 1995).

19   Thus, "[t]he writ provides a remedy from those suffering from the lingering collateral

20   consequences of an unconstitutional or unlawful conviction." *United States v. Walgren,* 885 F.2d

21   1417, 1420 (9th Cir. 1989).

22        "Relief . . . by way of writ of coram nobis, is a collateral attack on the conviction itself.

23   Thus, a petitioner who successfully attacks the plea agreement that is the basis of his conviction

24   may enter a plea of not guilty and be tried on evidence available, or may attempt to negotiate a

25   different plea agreement . . . ." *Rianto v. United States,* Nos. 1:11-CV-0217 AWI, 1:01-CR-5063

26   AWI, 2012 WL 591507 *2 (February 22, 2012) (*Rianto I*).

27        In order to obtain *coram nobis* relief, a movant must satisfy four requirements. He must

28

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1    establish that: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking

2    the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case or

3    controversy requirement of Article III; and (4) the error is of the most fundamental character."

4    *Velazquez v. United States,* 651 Fed. Appx. 620, 621 (9th Cir. 2016) (citing *Hirabayashi v.*

5    *United States,* 828 F.2d 591, 604 (9th Cir. 1987)); *Rianto I,* 2012 WL 591507 at *2.

6          The Ninth Circuit treats petitions for writs of *coram nobis* similarly to *habeas corpus*

7    petitions brought pursuant to 28 U.S.C. § 2255 on behalf of petitioners who are in actual custody.

8    *United States v. Taylor,* 648 F.2d 565, 573 (9th Cir. 1981). Thus, where the petitioner raises a

9    claim of ineffective assistance of counsel, a court should hold an evidentiary hearing unless the

10   record *conclusively* shows that the petitioner's counsel was *not* ineffective. *United States v.*

11   *Burrows,* 872 F.2d 915, 917 (9th Cir. 1989).

12                                        **A.**

13                       **A More Usual Remedy Is Not Available.**

14          In order to invoke the writ of *coram nobis* to correct a fundamental error affecting the

15   integrity of a criminal conviction, there must be no other, "more usual" remedy available to the

16   petitioner. *Matus-Leva v. United States,* 287 F.3d 758, 760 (9th Cir. 2002). Thus, a prisoner in

17   actual custody may not bring a *coram nobis* petition because a "more usual remedy," a writ of

18   habeas corpus, is available to him. *Id.*

19          Mr. Nemer is not in custody. Thus, relief under 28 U.S.C. § 2255 is unavailable. *Matus-*

20   *Leva,* 287 F.2d at 761; *Njai v. United States,* 484 F.Supp.2d 1040, 1050 (D. Ariz. April 16,

21   2007). And he has already served his sentence. And therefore, the writ of error *coram nobis* is

22   the only proper remedy available to him in seeking to vacate his conviction on the basis of

23   fundamental error. *Hansen,* 906 F.Supp. at 693; *Rianto I,* 2012 WL 591507 at *2.

24   …

25   …

26   …

27   …

28

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

**B.**

## Adverse Consequences Attach To Petitioner's Conviction In That It Renders Him Inadmissible To The United States.

In order to obtain *coram nobis* relief, a petitioner must prove that he suffers adverse consequences as a result of a fundamentally erroneous conviction – meaning "consequences *arising from* the conviction, not the conviction *itself*." *Rianto I,* 2012 WL 591507 at \*3 (emphasis added). Thus, a petitioner must demonstrate that the "case or controversy" requirement of Article III is satisfied, and that a favorable decision would redress his grievance. *United States v. Verrusio,* No. 09-cr-00064, 2017 WL 2634638 at \*3 (D.D.C. June 19, 2017). *Accord, e.g., United States v. George,* 676 F.3d 249, 256 n.3 (1st Cir. 2012) (petitioner must show that granting of writ of error *coram nobis* would "eliminate the claimed collateral consequence and bring about the relief sought"); *Fleming v. United States,* 146 F.3d 88, 90 (2d Cir. 1998) (*coram nobis* petitioner must show that he "continues to suffer legal consequences from [his] conviction that may be remedied by granting of the writ").

The Ninth Circuit *presumes* that adverse collateral consequences inevitably flow from any criminal conviction. *Colino v. United States,* No. SACV 11-0904, 2012 WL 1198446 at \*11 (C.D. Cal. April 9, 2012). *Wood v. Hall,* 130 F.3d 373, 376 (9th Cir. 1997) ("There is an 'irrebuttable' presumption that collateral consequences arise from any criminal conviction"); *United States v. Walgren,* 885 F.2d 1417, 1421-22 (9th Cir. 1989) (there is a "liberal" presumption that adverse collateral consequences flow from any criminal conviction); *Hirabayashi,* 828 F.2d at 606-07 (even a misdemeanor conviction carries a presumption of adverse collateral consequences).

And specifically, a *change of immigration status* attributable to a criminal conviction is recognized in the Ninth Circuit as sufficient to satisfy the case or controversy requirement of Article III. *United States v. Kwan,* 407 F.3d 1005, 1014 (9th Cir. 2005), *abrogated on other grounds by Padilla v. Kentucky,* 559 U.S. 356 (2010); *Rianto I,* 2012 WL 591507 at \*3.

Here, Mr. Nemer suffers a serious, *actual* adverse collateral consequence of his conviction in this case pertaining to his immigration status. Thus, under 8 U.S.C. § 1182(I), "any

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

10 of 21

1   alien convicted of, or who admits having committed . . . a crime involving moral turpitude . . . or

2   an attempt or ***conspiracy*** to commit such crime . . . is inadmissible" (emphasis added). And

3   Conspiracy to Possess and Pass Counterfeit Obligations of the United States With Intent To

4   Defraud in violation of 18 U.S.C. § 371 is deemed a crime of moral turpitude. *See generally,*

5   *Jordan v. De George,* 341 U.S. 223, 227 (1951) ("Without exception, federal and state courts

6   have held that a crime in which fraud is an ingredient involves moral turpitude"). On that basis,

7   Mr. Nemer has been found to be ineligible to enter the United States. **Exhibit A** ¶¶ 31-32.

8       However, if Petitioner's conviction is vacated pursuant to writ of error *coram nobis* in

9   order to correct the fundamental error vitiating its constitutional integrity as set forth *infra*, his

10  admissibility to the United States will be restored. And he may proceed to trial on available

11  evidence or attempt to negotiate a different plea agreement not implicating a crime of moral

12  turpitude adversely impacting his immigration status. Accordingly, the adverse collateral legal

13  disability arising from Petitioner's conviction is capable of redress by writ of error *coram nobis*.

14                                  **C.**

15  **The Legal Integrity Of Petitioner's Conviction Is Vitiated By A
    Constitutional Error Of The Most Fundamental Character.**

16

17                                 **(1.)**

18  **Petitioner's Original Criminal Defense Counsel Affirmatively
    Misadvised Him That His Guilty Plea Would Not Implicate
19  Adverse Immigration Consequences And Thereby Failed To
    Provide Him With The Effective Assistance Of Counsel
20  Guaranteed By The Sixth Amendment To The Constitution Of
    The United States.**

21

22      To obtain relief by writ of error *coram nobis*, a petitioner must demonstrate that an error

23  of the most fundamental character vitiates the legal integrity of his conviction. *Hirabayashi*, 828

24  F.2d at 604. And the Ninth Circuit has held that "[a] movant may satisfy the fundamental error

25  requirement by showing that he received ineffective assistance of counsel." *Kwan,* 407 F.3d at

26  1014; *Hamilton v. Ayers,* 583 F.3d 1100, 1129-30 (9th Cir. 2009).

27      In order to prevail, in turn, on a claim of ineffective assistance of counsel, a petitioner

28  must show that: (1) counsel's performance fell below an objective standard of reasonableness;

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1 | and (2) there is a reasonable probability that, but for counsel's deficiencies, the result of the
2 | proceeding would have been different. *Strickland v. Washington*, 466 U.S. at 688 (1984).

3 |

(a.)

### Mr. Kennedy affirmatively misadvised Petitioner regarding the adverse immigration consequences of his guilty plea; and therefore, his performance fell below an objective standard of reasonableness.

8 |

In support of a claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 694. "Attorneys representing non-citizens in criminal proceedings are required to uphold a number of duties to satisfy professional standards under *Strickland*." *Rianto v. United States*, 2017 WL 3334011 at *4 (E.D.Cal. August 4, 2017) (*Rianto II*). And the Ninth Circuit has recognized that where, as here, an attorney *affirmatively misadvises* his client with respect to the adverse immigration consequences of a guilty plea, deficient performance under the *Strickland* standard attaches. *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625 at *4 (E.D. Cal. July 1, 2010) *Kwan*, 407 F.3d at 1014; *Rianto*, 2012 WL 591507 at *3.

Since *Kwan*, in *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that the first prong of the *Strickland* test is satisfied where counsel merely "fail[s] to advise" an accused about the adverse immigration consequences of a guilty plea. However, *Padilla* pronounced a prospective rule only, and has been held not to be retroactive. *Chaidez v. United States*, 586 U.S. 342, 369-70 (2013). And therefore, a pre-*Padilla* allegation that counsel "failed to advise" a petitioner about the adverse immigration consequences associated with a guilty plea is insufficient to satisfy the first prong of the *Strickland* test. *Valazquez v. United States*, 651 Fed.Appx. 620, 622 (9th Cir. 2016). Petitioner's plea was entered prior to *Padilla*. And therefore, the jurisprudence of that case is inapplicable here.

However, Mr. Nemer is not challenging a simple *failure* of advice by Mr. Kennedy. Rather, Petitioner challenges the *affirmatively misleading* advice provided to him by Mr. Kennedy with respect to the adverse immigration consequences of his guilty plea, (**Exhibit A ¶¶**

Gentile Cristalli
iller Armeni Savarese
Attorneys At Law
) S. Rampart Blvd. #420
s Vegas, Nevada 89145
(702) 880-0000

12 of 21

18-24; **Exhibit C** ¶¶ 10-14), pursuant to the pre-existing and retroactive jurisprudence of *Kwan*. Indeed, the Ninth Circuit has held that "the duties of and performance standards for counsel recognized in *Kwan* have **retroactive** application." *Rianto II,* 2017 WL 3334011 at *5 (emphasis added) (citing *United States v. Chan,* 792 F.3d 1151, 1152 (9th Cir. 2015)). And, as the Ninth Circuit had further previously explained in *Chan,* "while *Padilla* partly abrogated *Kwan* . . . . *Kwan's* holding that **affirmative misrepresentations** by counsel regarding immigration consequences constitute deficient performance under *Strickland* . . . clearly survives *Padilla*."). 792 F.3d at 1154 (9th Cir. 2015) (emphasis added).

Moreover, as the Ninth Circuit has further explained, where defense counsel's performance is ineffective in this regard, the language of a plea agreement and the court's plea colloquy cannot ameliorate the deficiency. *United States v. Rodriguez-Vega,* 797 F.3d 781, 787 (9th Cir. 2015). For "[i]t is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy." *United States v. Urias-Marrufo,* 744 F.3d 361, 369 (5th Cir. 2014).

Here, Mr. Kennedy affirmatively misadvised Mr. Nemer, in response to his specific inquiry, as to the inexorable adverse immigration consequences of his guilty plea to an offense involving "intent to defraud," in that Petitioner's ensuing conviction therefore implicates a crime of "moral turpitude," rendering him inadmissible to the United States under 8 U.S.C. § 1182(I); and therefore, Mr. Kennedy's performance was deficient under *Strickland.* **Exhibit A** ¶¶ 18-24; **Exhibit C** ¶¶ 10-14. And, Mr. Nemer accepted the plea negotiation and entered his plea of guilty in reliance on Mr. Kennedy's erroneous advice. **Exhibit A** ¶ 24; **Exhibit C** ¶ 14. Thus, like the defense attorney in *Kwan,* Mr. Kennedy did not merely *fail to inform* Mr. Nemer of the adverse immigration consequences of his guilty plea, but rather, he *affirmatively misinformed* Petitioner that his plea in this case would have no adverse immigration consequences. This was objectively unreasonable under *Kwan.* And accordingly, deficient performance under the first prong of the *Strickland* test attaches. *Kwan,* 407 F.3d at 1015; *Rianto,* 2017 WL 3334011 at *4 ("petitioner's allegations that his counsel affirmatively provided him with misinformation regarding the
…

Gentile Cristalli
iller Armeni Savarese
Attorneys At Law
0 S. Rampart Blvd. #420
s Vegas, Nevada 89145
(702) 880-0000

immigration consequences of his plea pursuant to the plea agreement are sufficient under *Kwan* to state a cognizable IAC claim").

(b.)

### A reasonable probability exists that but for Mr. Kennedy's erroneous advice Petitioner would not have pleaded guilty and would have insisted instead on going to trial.

To satisfy the second prong of the *Strickland* test, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a standard of proof sufficient to undermine confidence in the outcome," and is "somewhat lower" than the preponderance of the evidence standard. *Id.*

However, "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain. That is because, while we ordinarily 'apply a strong presumption of reliability to judicial proceedings,' 'we cannot accord' any such presumption 'to judicial proceedings that never took place.'" *Lee v. United States,* 137 S.Ct. 1958, 1965 (2017). Thus, in the context of a guilty plea, a petitioner satisfies the second prong of the *Strickland* test where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

Accordingly, in *Rianto II,* the petitioner showed that but for his counsel's misinformation regarding the adverse immigration consequences of his guilty plea, he would have sought different plea terms which would not carry adverse immigration consequences, or, failing that, would have elected to go to trial. 2017 WL 3334011 at *6. Accordingly, the court found that the petitioner had adequately alleged fundamental error, stating a cognizable claim for *coram nobis* relief. *Id.* at *8. Thus, taking into consideration petitioner's immigration status, the court explained that "an alien charged with a crime . . . would factor the immigration consequences of . . .

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1  conviction into deciding whether to plead or proceed to trial." *Id.* (citing *Magana-Pizano v. INS,*

2  200 F.3d 603, 612 (9th Cir. 1999).

3       The Supreme Court recently adopted this position – previously maintained in the Ninth

4  Circuit – recognizing that an alien accused is constitutionally prejudiced where his counsel's

5  erroneous advice leads him to accept a guilty plea agreement carrying adverse immigration

6  consequences rather than take the case to trial. *Lee,* 137 S.Ct. at 1967-69. In *Lee,* the defendant

7  pleaded guilty to a drug offense based upon his attorney's erroneous assurance that his plea

8  would not implicate adverse immigration consequences. He thereafter learned that, contrary to

9  his attorney's representations, as a result of his guilty plea, his deportation was mandatory. In

10 that his attorney's erroneous assurance that adverse immigration consequences would not attach

11 to his conviction was a determinative factor in the defendant's decision to plead guilty, the

12 Supreme Court held that he had adequately demonstrated a reasonable probability that he would

13 have rejected the plea, and gone to trial, had he been correctly advised that his guilty plea would

14 lead to inexorable adverse immigration consequences. *Id.* at 1967-69. *See also Vartelas v.*

15 *Holder,* 132 S.Ct. 1479, 1492 n.10 (2012) ("Armed with knowledge that a guilty plea would

16 preclude travel abroad, alien[ ] [defendants] might endeavor to negotiate a non-excludable

17 offense . . . . or exercise a right to trial").

18      The attached exhibits show that Mr. Nemer would not have pleaded guilty in this case

19 and would have insisted on going to trial had he been properly advised that his guilty plea would

20 inexorably render him inadmissible to the United States. **Exhibit A** ¶¶ 16-24, 50-51; **Exhibit B**

21 ¶¶ 10-14. Thus, prior to his acceptance of the plea agreement and entry of his guilty plea, Mr.

22 Nemer explained to his counsel the importance of his ability to travel to the United States in

23 furtherance of his various international businesses. And his counsel's affirmative (erroneous)

24 assurance that adverse immigration consequences would not obtain was clearly the determinative

25 factor in Petitioner's decision to plead guilty. Accordingly, Mr. Nemer demonstrates a

26 reasonable probability that, but for Mr. Kennedy's error, he would not have pleaded guilty and

27 would have insisted on going to trial.

28 ...

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

**D.**

**Valid Reasons Exist For Not Attacking Petitioner's Conviction Earlier.**

A petition for writ of *coram nobis* is not subject to a specific statute of limitations. *Telink, Inc. v. United States,* 24 F.3d 42, 45 (9th Cir. 1994); *Rewak v. United States,* 512 F.2d 1184, 1185 (9th Cir. 1975) (granting petition for writ of error of *coram nobis* for sentencing error ten years after petitioner was released from custody). Rather, petitioners seeking *coram nobis* relief are merely required "to provide valid or sound reasons explaining why they did not attack their convictions earlier." *Telink, Inc.,* 24 F.3d at 45. *See Hirabayashi*, 828 F.2d at 604; *Kwan,* 407 F.3d at 1013. And in its consideration of whether valid reasons excuse a delay in seeking *coram nobis* relief, the court should not consider prejudice to the government. *United States v. Riedl,* 496 F.3d 1003, 1007-08 (9th Cir. 2007).[1]

**(1.)**

**Based Upon The Government's Post-Conviction Issuance To Him Of A Ten (10) Year Visa To Enter The United States, Petitioner Had No Reason To Suspect That Mr. Kennedy Had Misadvised Him Regarding The Immigration Consequences Of His Guilty Plea Or That His Guilty Plea Rendered Him Inadmissible Until He Unsuccessfully Attempted To Renew His Visa Eleven (11) Years Later.**

The Ninth Circuit has held that "[t]he law does not require [the petitioner] to challenge his conviction at the earliest opportunity, it only requires that [the petitioner] have ***sound reasons for not doing so***." *Hubenig,* 2010 WL 2650625 at *3 (*citing Kwan,* 407 F.3d at 1014) (emphasis added). In *Hubenig,* five (5) years after petitioner pleaded guilty based upon his attorney's affirmative erroneous advice that his plea would not implicate adverse immigration consequences, deportation proceedings were brought against him based upon his resulting conviction. In assessing petitioner's failure to challenge the conviction earlier, the court found

---

[1] Only after a petitioner demonstrates valid reasons for not seeking *coram nobis* relief sooner may the government seek to bar the petition on the ground of laches by making a prima facie showing of prejudice to the government. *Telink, Inc.,* 24 F.3d at 47. "If the government meets that burden, the burden of production of evidence then shifts to the petitioner to show either that the government actually was not prejudiced or that petitioner exercised reasonable diligence in filing the claim." *Id.*

1    that the petitioner was clearly unaware of the adverse immigration consequences of his guilty

2    plea until the government initiated deportation proceedings against him. Accordingly, despite his

3    five (5) year lapse in attacking the conviction, the court found the petitioner asserted a valid

4    reason for not seeking relief earlier. *Accord, e.g., United States v. Akinsade,* 686 F.3d 248, 252

5    (4th Cir. 2012) (finding valid reasons existed for not attacking his conviction earlier because

6    "[u]ntil physically detained by immigration authorities . . . [Petitioner] had no reason to

7    challenge the conviction as his attorney's advice, up to that point in time, appeared accurate.").

8          On or about October 27, 2000, Mr. Nemer pleaded guilty to one count of Conspiracy to

9    Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C. § 371.

10   **Exhibit A** ¶ 24; **Exhibit C** ¶ 14; **Exhibit D**. On or about July 31, 2001, nine (9) months after Mr.

11   Nemer entered his plea and after he had long since been sentenced thereon, he was issued a ten

12   (10) year visa to travel to the United States for business purposes notwithstanding his conviction.

13   **Exhibit A** ¶ 27. And from 2001 to 2011 – during the pendency of that visa – Mr. Nemer entered

14   the United States over one hundred (100) times without incident. *Id.* at ¶ 28. And he accordingly

15   assumed that Mr. Kennedy's assurances were thereby confirmed, having had no occasion to

16   suspect otherwise. *Id.* at ¶ 29.

17         Since then, during regular business trips to the United States, Petitioner has purchased

18   hundreds of American motor vehicles for re-sale at his automobile dealerships in Venezuela; a

19   Beechcraft 2007 King Air 350 airplane for $5,513,632; a Hawker 400XP airplane for

20   $6,111,520; commercial real estate in Florida; and $7,000,000 worth of condominiums in Miami.

21   **Exhibit A** ¶ 30.

22         On or about October 26, 2011, Mr. Nemer attempted to renew his visa for another ten

23   (10) years. *Id.* at ¶ 31. However, Petitioner's application for renewal was denied, and he was

24   informed – *for the first time* – by immigration authorities that he was ineligible for admission to

25   the United States because of his conviction in the instant case. **Exhibit A** ¶ 32.

26         Accordingly, just as in *Hubenig* and *Akinsade,* from the time of Mr. Nemer's entry of

27   guilty plea on October 27, 2000 and until the denial of his visa renewal application October 26,

28   2011, Mr. Nemer had no reason to believe, or even suspect, that he had been misadvised by Mr.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

Kennedy as to the adverse immigration consequences of his plea. **Exhibit A** ¶ 29.

And therefore, like the *coram nobis* petitioners in those cases, Mr. Nemer had a valid reason on that basis for failing to attack his conviction for the first eleven (11) years following the entry of judgment.

(2.)

**Mr. Chairez Did Not Counsel Petitioner To Promptly Seek
Effective Judicial Relief From The Adverse Immigration
Consequences Of His Conviction By Filing A Petition For Writ
Of Error *Coram Nobis* With Respect To His Underlying
Conviction, And Affirmatively Led Petitioner To Believe That
Application For Temporary, Discretionary Administrative
Waiver Of His Inadmissible Status Was His Only Available
Remedy.**

The Ninth Circuit has also recognized that a valid reason exists for failing to seek *coram nobis* relief sooner where counsel fails to promptly advise a petitioner about the availability of that remedial procedure. *Kwan*, 407 F.3d at 1013-1014. In *Kwan*, the petitioner, who was misadvised by his criminal defense counsel regarding the adverse immigration consequences of his plea to an aggravated felony, shortly thereafter became the subject of deportation proceedings. He thereupon consulted with an immigration attorney who advised him to challenge the deportation findings instead of attacking his underlying conviction by filing a writ of error *coram nobis*. Based on the advice of his immigration attorney, the petitioner then focused his attention on challenging the deportation – not the conviction. The Ninth Circuit found that while it might have been more "prudent" for petitioner to collaterally attack his conviction earlier, his alternative course of action was reasonable, based as it was upon his reliance on his immigration counsel's faulty advice, and was a valid reason for not attacking his conviction earlier. *Id. See also e.g., United States v. Tucor Int'l, Inc.,* 189 F.3d 834, 836-38 (9th Cir.1999) (granting *coram nobis* relief even though petitioner waited four years after pleading guilty to file *coram nobis* petition and petitioner could have, but did not, raise same claim at time of conviction); *Hirabayashi,* 828 F.2d at 605 (rejecting argument that *coram nobis* petition filed almost forty (40) years after conviction should be dismissed on ground of laches even though

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

claim was based upon evidence that could have been, but was not, discovered years earlier); *Rewak v. United States,* 512 F.2d 1184, 1185 (9th Cir. 1975) (granting *coram nobis* petition ten (10) years after petitioner was released from custody for sentencing error).

Although Mr. Nemer learned of his inadmissibility to the United States in 2011, he likewise waited until 2015 to challenge his conviction by *coram nobis* because he followed the advice of Mr. Chairez – who led him to believe that application for temporary administrative "waivers" of his inadmissible status was the exclusive remedy available to him. **Exhibit A ¶¶** 33-44; **Exhibit E ¶¶** 6-18. When Mr. Nemer retained Mr. Chairez, an experienced immigration attorney, to assist with his matter, Mr. Chairez advised Mr. Nemer to merely apply for a waiver to enable entrance into the United States. **Exhibit A ¶¶** 34-36; **Exhibit E ¶¶** 8-9. Despite Mr. Chairez's knowledge that Mr. Kennedy had affirmatively misadvised Mr. Nemer regarding the adverse immigration consequences of his guilty plea, (**Exhibit E ¶** 6), Mr. Chairez advised Petitioner to seek a series of temporary administrative waivers of his inadmissibility status rather than promptly attack his underlying conviction pursuant to the *coram nobis* process. *Id.* at **¶¶** 8-9; **Exhibit A ¶¶** 33-36. Mr. Chairez was well-aware of Mr. Nemer's colorable claim of ineffective assistance of counsel with respect to Mr. Kennedy, yet he still advised him to seek a series of temporary administrative waivers rather than permanent judicial relief – a process that consumed years without providing a lasting remedy. **Exhibit A ¶¶** 33-43; **Exhibit E ¶¶** 8-16. Like the petitioner in *Kwan,* Mr. Nemer therefore relied upon Mr. Chairez's advice and sought alternative relief instead of attacking his conviction by petition for writ of error *coram nobis*. *Kwan*, 407 F.3d at 1013-1014. And Mr. Chairez did not advise Mr. Nemer to attack his underlying conviction by *coram nobis* until years later. **Exhibit A ¶** 44; **Exhibit E ¶¶** 17-18. Yet once Mr. Chairez belatedly advised Mr. Nemer to attack his underlying conviction by such means, Mr. Nemer immediately retained him to do so.   **Exhibit A ¶** 44; **Exhibit E ¶¶** 17-18. And Mr. Chairez did not file such a petition until November 29, 2015. **Exhibit E ¶** 18.

However, unbeknownst to Mr. Nemer, and through no fault of Petitioner, Mr. Chairez erroneously filed the petition under a new (civil) case number rather than in the above-entitled criminal case. **Exhibit A ¶** 45; **Exhibit E ¶** 19.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

19 of 21

1   Unbeknownst to Mr. Nemer, and through no fault of Petitioner, Mr. Chairez did not

2   thereafter correctly file the same petition under the appropriate case number in the instant

3   criminal case until April 25, 2016. **Exhibit A** ¶ 46; **Exhibit E** ¶ 20. Unbeknownst to Mr. Nemer,

4   and through no fault of Petitioner, Mr. Chairez failed to serve the government with that petition.

5   **Exhibit A** ¶ 47; **Exhibit E** ¶ 21. And unbeknownst to Mr. Nemer, and through no fault of

6   Petitioner, as a result, the petition has lain dormant for eighteen (18) months without response or

7   proceedings thereon. **Exhibit A** ¶ 47; **Exhibit E** ¶ 21.

8                                            **3.**

9

10                                     **CONCLUSION**

11          THEREFORE, for all the foregoing reasons, Petitioner ATEF SALAMI NEMER

12  HIRCHEDD respectfully prays that this Honorable Court grant this Amended Petition for A Writ

13  of Error *Coram Nobis* together with such other and further relief as the Court deems fair and just

14  in the premises.

15          DATED this 24th day of October, 2017.

16                                     GENTILE CRISTALLI
                                       MILLER ARMENI SAVARESE
17

18                                     VINCENT SAVARESE, III
19                                     Nevada Bar No. 2467
                                       LAUREN E. PAGLINI
20                                     Nevada Bar No. 14254
                                       410 South Rampart Blvd., Suite 420
21                                     Las Vegas, Nevada  89145
                                       Tel: (702) 880-0000
22                                     *Attorneys for Defendant,*
                                       *Atef Salami Nemer Hirchedd*
23

24

25

26

27

28

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

20 of 21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of October, 2017, I electronically filed the above and foregoing **AMENDED PETITION FOR A WRIT OF ERROR CORAM NOBIS** with the Clerk of the Court for the United States District Court for the District of Nevada by using the CM/ECF system which will send notification of such filing(s) to the following:

Daniel G. Bogden - daniel.bogden@usdoj.gov

Elizabeth O. White - elizabeth.o.white@usdoj.gov

An employee of
Gentile Cristalli Miller Armeni Savarese

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
10 S. Rampart Blvd. #420
as Vegas, Nevada 89145
(702) 880-0000

# EXHIBIT A

# EXHIBIT A

## DECLARATION OF ATEF SALAMI NEMER HIRCHEDD

I, Atef Salami Nemer Hirchedd, hereby declare as follows:

1.  I am over the age of 18 and am mentally competent to testify.  I have personal knowledge of the facts stated herein, except where stated upon information and belief, and as to facts stated upon information and belief, I believe them to be true.  If called upon to testify as to the matters stated herein, I could and would do so.

2.  I make this Declaration in Support of my Amended Petition for Writ of Error *Coram Nobis* in the matter entitled *United States of America v. Atef Salami Nemer Hirchedd,* Case No. 2:99-cr-309-KJD.

3.  I was born in Swedia, Syria, and emigrated as a child, with my family, to Barinas, Venezuela, where, as an adult, I ultimately pursued a career in business.

4.  I am a citizen of Venezuela.

5.  I began my career as an entrepreneur by founding a successful furniture store in Barinas, Venezuela.

6.  I thereafter began building homes, shopping centers and hotels in Barinas, Venezuela, and started a small airline company there.

7.  Starting in or around 1993, I opened a chain of motor vehicle dealerships throughout Venezuela, and began frequently traveling to Miami, Florida to purchase American motor vehicles for re-sale at my dealerships in Venezuela, and since 1993, I have invested millions of dollars purchasing American vehicles for my dealerships.

8.  Over the years, I have also traveled to the United States to purchase American aircraft for my airline company and have invested millions of dollars in American real estate.

9.  As an international businessman, I regularly travel to the United States for both business and pleasure.

10. In July 1999, my wife and I traveled to Las Vegas, Nevada with Orlando Sanchez Medina and Kamilo Yuseff Mousali, my co-defendants in the above-entitled case, and stayed at the Mirage Hotel and Casino.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1 of 6

11. I obtained a sum of United States currency from a Venezuelan currency exchange prior to our trip to Las Vegas on this occasion.

12. On or about July 26, 1999, while we were playing the slot machines at the Mirage, I was arrested on the allegation that some of the notes with which I was playing were counterfeit.

13. I was subsequently charged by indictment in the above-entitled case with Conspiracy to Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C. § 371.

14. I retained Las Vegas attorney Kirk Kennedy, Esq. ("Mr. Kennedy") to represent me.

15. From the outset, I requested that Mr. Kennedy prepare my case as if the matter were going to proceed to trial.

16. I was gravely concerned about the negative impact that the Indictment would have on my immigration status and ability to travel to the United States.

17. As an international businessman, who regularly travels to the United States, it was critical me that the disposition of my Indictment have no adverse impact on my immigration status or ability to enter the United States.

18. In or around mid-2000, Mr. Kennedy advised me of the guilty plea agreement offered to me by the United States Attorney's Office.

19. Although the guilty plea offer was attractive, I was concerned with the adverse impact that a guilty plea would have on my immigration status and international travel to the United States.

20. I asked Mr. Kennedy if the proposed guilty plea would adversely impact my immigration status and ability to travel to the United States, and I advised him of the critical importance of such travel to my various business interests.

21. I told Mr. Kennedy that if the proposed guilty plea would result in adverse immigration consequences that I would rather take my chances and go to trial.

22. Mr. Kennedy, aware of both my immigration status and concerns, affirmatively advised me that the guilty plea would have no adverse impact on my immigration status or ability to travel to the United States.

23. Mr. Kennedy never advised me that the alleged offense in question, Conspiracy to

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

2 of 6

Possess and Pass Counterfeit Obligations of the United Sates in violation of 18 U.S.C. § 371 was deemed by American immigration officials to be a crime involving moral turpitude, conviction of which would subject me to exclusion from the United States.

24. Based on Mr. Kennedy's assurances, I pleaded guilty to one count of Conspiracy to Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C. § 371.

25. At sentencing, I was ordered to pay a fine in the amount of $10,000; agreed to forfeit a large sum of genuine United States currency seized from my person and my hotel room by Mirage security officers; and was sentenced to "time served."

26. My co-defendants entered into similar guilty plea agreements, and all three of us also were also ordered to make restitution, jointly and severally, in the amount of $3,400 to the Mirage Hotel and Casino.

27. On July 31, 2001, I obtained a ten (10) year visa to enter the United States from the United States Embassy in Caracas, Venezuela.

28. From 2001 to 2011, I traveled to the United States, without incident, on approximately 100 separate occasions.

29. As a result of this experience, I assumed that Mr. Kennedy's advice that my guilty plea would have no negative impact on my immigration status was correct and I had no reason to suspect otherwise.

30. Pursuant to regular business trips to the United States during this time, I have purchased hundreds of American motor vehicles for re-sale at my automobile dealerships in Venezuela; a Beechcraft 2007 King Air 350 airplane for $5,513,632; a Hawker 400XP airplane for $6,111,520; commercial real estate in Florida; and $7,000,000 worth of condominiums in Miami, Florida.

31. On or about October 26, 2011, I attempted to renew my ten (10) year visa to visit the United States.

32. However, I was denied renewal of my visa, and was informed – for the first time – by immigration authorities that I was ineligible for admission to the United States because of my conviction in this case because it was deemed by American immigration authorities to involve a

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

crime of moral turpitude.

33. I thereafter retained Don Chairez, Esq. ("Mr. Chairez"), who practices in the area of immigration law, to represent me in an effort to remedy my immigration status; explaining the circumstances of my guilty plea and the erroneous advice I received from Mr. Kennedy.

34. Mr. Chairez did not advise me of the availability of an application for *coram nobis* relief from my underlying conviction under such circumstances and on those grounds or recommend that I promptly pursue such a petition.

35. Instead, Mr. Chairez advised me to pursue administrative relief by seeking a "waiver" of my inadmissible status, which would allow me to enter and continue to conduct business in the United States, by filing an I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the American Embassy in Caracas, Venezuela.

36. I believed in good faith at the time that this administrative "waiver" process was the exclusive remedy available to me.

37. Therefore, on or about June 27, 2012, based on the advice and with the assistance of Mr. Chairez, I applied for a "waiver" by submitting an I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act to the American Embassy in Caracas, Venezuela.

38. Months passed and I still had not received any response to my application; whereupon, distraught about the adverse impact on my businesses, I requested that Mr. Chairez file another waiver application seeking entry into the United States.

39. On or about March 12, 2013, again with the assistance of Mr. Chairez, I filed another I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the Caracas Embassy.

40. On June 13, 2013, I was granted a waiver and issued a visa to enter into the United States for approximately eleven (11) months, which expired on May 9, 2014.

41. On or about September 12, 2014 – again based on the advice and with the assistance of Mr. Chairez – I again sought relief through the administrative "waiver" process, by filing another

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the Embassy in Caracas, Venezuela.

42. At the time I still believed in good faith that this administrative "waiver" process was the exclusive remedy available to me.

43. On October 10, 2015, I was granted another waiver and issued a two (2) year visa to enter the United States.

44. Mr. Chairez thereafter advised me for the first time of the existence of the judicial *coram nobis* process pursuant to which he said I could attack my underlying conviction based on Mr. Kennedy having affirmatively misled me regarding the adverse immigration consequences of my guilty plea, and I thereupon immediately retained Mr. Chairez to file the appropriate petition seeking that relief.

45. However, unbeknownst to me, Mr. Chairez erroneously filed the petition under a new (civil) case number rather than in the above-entitled criminal case.

46. Unbeknownst to me, Mr. Chairez did not thereafter correctly file the petition under the appropriate case number in the above-entitled criminal case until April 25, 2016.

47. Unbeknownst to me, Mr. Chairez failed to serve the government with that petition, and unbeknownst to me until now, the petition has lain dormant for eighteen months without response or proceedings thereon as a result.

48. My current visa expired on September 29, 2017 and accordingly, I am informed and do believe that I must leave the United States by March 2018, and that in the interim, I may not leave the country and thereafter re-enter.

49.  Aside from conviction in this case, I have no other criminal convictions or arrests.

50.  My visits to the United States are imperative to the success of my business ventures both here and in Venezuela, and therefore, my livelihood.

51.  If I had been properly advised that my guilty plea would deem me inadmissible to the United States, I would not have pleaded guilty, but rather, would have insisted on taking my chances at trial.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

5 of 6

1

2

    I declare under penalty of perjury under the law of the State of Nevada that the above information is true and correct.

3

    Executed on this 19 day of October, 2017.

4

Atef Salami Nemer Hirchedd

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

# EXHIBIT B

# EXHIBIT B



1  KATHRYN E. LANDRETH
   United States Attorney
2  JOSEPH E. SULLIVAN
   Assistant United States Attorney
3  701 E. Bridger Avenue, Suite 800
   Las Vegas, Nevada  89101
4  (702) 388-6336

5

6

7  # UNITED STATES DISTRICT COURT
8  # DISTRICT OF NEVADA
9  ## -oOo-

10  UNITED STATES OF AMERICA               )    CRIMINAL INDICTMENT
                                           )
11                     PLAINTIFF            )
                                           )
12  VS.                                    )    CR-S-99- _309_
                                           )
13  ATEF SALAMI NEMER HIRCHEDD,            )    VIOLATIONS:
    KAMILO YUSEFF MOUSALI, and            )
14  ORLANDO SANCHEZ MEDINA                 )    18 U.S.C. § 371 - Conspiracy to
                                           )    Possess   and   Pass   Counterfeit
15                     DEFENDANTS          )    Obligations of the United States;
    _____   )
16                                              18 U.S.C. § 982 - Forfeiture

17  **THE GRAND JURY CHARGES THAT:**               CR-S-99-0309-JBR-LRL

18                          <u>COUNT ONE</u>
19                          Conspiracy

20                  <u>The Conspiracy and its Objects</u>

21        1.      From on or about July 24, 1999, to on or about July 26, 1999, in

22  the State and Federal District of Nevada,

23                  **ATEF SALAMI NEMER HIRCHEDD,**
                    **KAMILO YUSEFF MOUSALI, and**
24                  **ORLANDO SANCHEZ MEDINA,**

25  defendants herein, knowingly conspired and agreed with each other, and with other

26  persons known and unknown to the Grand Jury, to pass, utter, publish and possess

*1*

falsely made, forged and counterfeited United States Federal Reserve Notes, with the
intent to defraud, then and there well knowing that the Federal Reserve Notes were
falsely made, forged and counterfeit obligations of the United States, in violation of
Title 18, United States Code, Section 472.

## Overt Acts

2.    In furtherance of the conspiracy and to effect the objects of the
conspiracy, the following overt acts, among others, were committed in the State and
Federal District of Nevada:

(a)    on or about July 26, 1999, **ATEF SALAMI NEMER HIRCHEDD**
possessed $600 in counterfeited Federal Reserve Notes in his left front shirt pocket
and $2,450 in counterfeited Federal Reserve Notes in a brown leather billfold in his
hotel room at the Mirage Hotel and Casino, Las Vegas, Nevada;

(b)    on or about July 26, 1999, **KAMILO YUSEFF MOUSALI**, and
**ORLANDO SANCHEZ MEDINA** fed counterfeited $100 Federal Reserve Notes into the
bill acceptor of slot machine #30133 at the Mirage Hotel and Casino, Las Vegas,
Nevada, and immediately cashed out tokens from the credits on this machine;

(c)    on or about July 26, 1999, **ATEF SALAMI NEMER HIRCHEDD**
fed  counterfeited $100 Federal Reserve Notes into the bill acceptor of slot machine
#15957 at the Mirage Hotel and Casino, Las Vegas, Nevada, and immediately cashed
out tokens from the credits on this machine;

(d)    on or about July 26, 1999, **KAMILO YUSEFF MOUSALI** fed
counterfeited $100 Federal Reserve Notes and counterfeited $50 Federal Reserve
Notes into the bill acceptor of slot machine #15958 at the Mirage Hotel and Casino,
Las Vegas, Nevada, and immediately cashed out tokens from the credits on this
machine;

2

1         (e)     after cashing out the tokens received in exchange for the

2 counterfeited Federal Reserve Notes from slot machines #30133, #15957 and #15958,

3 **ATEF SALAMI NEMER HIRCHEDD, KAMILO YUSEFF MOUSALI, and ORLANDO**

4 **SANCHEZ MEDINA** immediately carried those tokens in buckets to change booths and

5 exchanged the tokens for genuine currency.

6         All in violation of Title 18, United States Code, Section 371.

7

8 **COUNT TWO**
Forfeiture

9

10         1.     Through the criminal activity described in Count One, which

11 allegations are hereby incorporated herein by reference,

12 **ATEF SALAMI NEMER HIRCHEDD,**
**KAMILO YUSEFF MOUSALI, and**

13 **ORLANDO SANCHEZ MEDINA,**

14 defendants herein, if convicted of Count One, shall forfeit to the United States any

15 property constituting, or derived from, proceeds the defendants obtained directly or

16 indirectly, as a result of such violation, pursuant to Title 18, United States Code,

17 Section 982(a)(2)(B). Such properties include, but are not limited to, the following:

18         (a)     $2,456 in genuine currency recovered from the person of

19 **ATEF SALAMI NEMER HIRCHEDD;**

20         (b)     $1,013 in genuine currency recovered from the person of

21 **KAMILO YUSEFF MOUSALI;**

22         (c)     $792 in genuine currency recovered from the person of

23 **ORLANDO SANCHEZ MEDINA;**

24         (d)     $12,700 in genuine currency recovered from the hotel room

25 of **ATEF SALAMI NEMER HIRCHEDD;**

26 .   .   .

3

1        (e)     $10,202 in genuine currency recovered from the hotel room

2   of **KAMILO YUSEFF MOUSALI**;

3        (f)     $7,500 in genuine currency recovered from the hotel room

4   of **ORLANDO SANCHEZ MEDINA**;

5        (g)     $762 in genuine currency recovered from the person of ATEF

6   **SALAMI NEMER HIRCHEDD**'s wife Sousan De Nemer;

7        (h)     $153 in genuine currency recovered from the person of

8   **KAMILO YUSEFF MOUSALI**'s girlfriend M. Avendano Calderon;

9        (i)     $209 in genuine currency recovered from the person of

10  **ORLANDO SANCHEZ MEDINA**'s wife Miriam Josefa Medina.

11       All pursuant to Title 18, United States Code, Section 982(a)(2)(B).

12

13  **DATED**: this 4 day of August 1999.

14

15  **A TRUE BILL**:

16                                          FOREPERSON OF THE GRAND JURY

17  KATHRYN E. LANDRETH
    United States Attorney

18

19

20  JOSEPH E. SULLIVAN
    Assistant United States Attorney

21

22

23

24

25

26

                                    4

# EXHIBIT C

# EXHIBIT C

## **DECLARATION OF KIRK KENNEDY, ESQ.**

I, Kirk Kennedy, Esq., hereby declare as follows:

1.  I am over the age of 18 and am mentally competent to testify.  I have personal knowledge of the facts stated herein, except where stated upon information and belief, and as to facts stated upon information and belief, I believe them to be true.  If called upon to testify as to the matters stated herein, I could and would do so.

2.  I am an attorney duly licensed to practice law in the State of Nevada and have been since October 1993, and am a member of the State Bar of Nevada in good standing.

3.  I make this Declaration in support of Atef Salami Nemer Hirchedd's Amended Petition for Writ of Error *Coram Nobis* in the matter entitled *United States of America v. Atef Salami Nemer Hirchedd,* Case No. 2:99-cr-309-KJD.

4.  In 1999, I was retained by Atef Salami Nemer Hirchedd ("Mr. Nemer") to represent him following his indictment in the above-entitled matter, in which he was charged with the offense of Conspiracy to Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C § 371 (§ 472) based upon the allegation that some of the United States currency with which he was playing slot machines at the Mirage Hotel and Casino on or about July 26, 1999 were counterfeit notes.

5.  I knew that Mr. Nemer was a citizen of Venezuela and a businessman who regularly traveled to and conducted business in the United States.

6.  I knew that Mr. Nemer had no prior criminal record.

7.  From the outset, and at Mr. Nemer's request, I prepared Mr. Nemer's case as if the matter were going to proceed to trial.

8.  The anticipated trial defense contemplated that the Venezuelan money supply had become contemporaneously contaminated with counterfeit United States currency by drug traffickers, and that Mr. Nemer had been unknowingly provided with some counterfeit United States currency by a Venezuelan currency exchange from which he had obtained American money prior to his trip to Las Vegas in July 1999.

9.  However, the United States Attorney's Office ultimately communicated to me an offer to

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

resolve the case by plea agreement, pursuant to which the government would not recommend that Petitioner be required to serve a sentence of imprisonment, and pursuant to which Mr. Nemer would enter a plea of guilty to Count One of the Indictment in which he was charged with Conspiracy to Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C. § 371, pay a $10,000 fine, assume joint and several responsibility together with his co-defendants to pay restitution to the Mirage Hotel and Casino in the amount of $3,400, and receive credit for time served.

10. When I presented the proposed guilty plea agreement to Mr. Nemer, he explained to me that it was of paramount importance to him, in determining whether or not to accept the deal, that a guilty plea not affect his right to travel to the United States in furtherance of his various business interests, and that he would elect to try the case if the proposed guilty plea would implicate adverse immigration consequences or entry restriction.

11. I did not practice in the area of immigration law.

12. Without consulting an attorney who practiced in the area of immigration law, I mistakenly advised Mr. Nemer that the plea would have no adverse effect on his immigration status or ability to travel to the United States.

13. This advice was based on my erroneous belief that the proposed offense of conviction (Conspiracy to Possess and Pass Counterfeit Obligations of the United States) was not deemed by immigration authorities to be a crime of moral turpitude subjecting Mr. Nemer to exclusion from the United States.

14. Based on my erroneous advice and assurances, Mr. Nemer accepted the terms of the plea agreement and thereupon pleaded guilty to Count One of the Indictment charging him with Conspiracy to Possess and Pass Counterfeit Obligations of the United States in violation of 18 U.S.C. § 371.

///

///

///

///

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

2 of 3

15. Based upon his plea of guilty, Mr. Nemer was adjudged guilty of that offense by this Court.

I declare under penalty of perjury under the law of the state of Nevada that the above information is true and correct.

Executed on this 20 day of October, 2017.

Kirk Kennedy, Esq.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

3 of 3

# EXHIBIT D

# EXHIBIT D



AO 245B  (8/96) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

District of _____NEVADA_____

UNITED STATES OF AMERICA

V.

ATEF SALAMI NEMER HIRCHEDD

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

Case Number:     CR-S-99-309-KJD(LRL)

Kirk Kennedy, retained
Defendant's Attorney

### THE DEFENDANT:

x   pleaded guilty to count(s)  1

☐   pleaded nolo contendere to count(s) _____
    which was accepted by the court.

☐   was found guilty on count(s) _____
    after a plea of not guilty.

| Title & Section | Nature of Offense | Date Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC§371 | Conspiracy to Possess and Pass Counterfeit Obligations of the United States | 7/26/99 | 1 |

· The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s) _____

x   Count(s) 2 _____  x  is  ☐ are  dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:  Unknown

Defendant's Date of Birth:  unknown

Defendant's USM No.:  Unknown

Defendant's Residence Address:

Venezuela

_____

_____

Defendant's Mailing Address:

unknown

October 24, 2000
Date of Imposition of Judgment

Signature of Judicial Officer

KENT J. DAWSON, U.S. DISTRICT JUDGE
Name and Title of Judicial Officer

October 24, 2000
Date

AO 245B   (8/96) Sheet 2—Imprisonment

DEFENDANT:        ATEF SALAMI NEMER HIRCHEDD        Judgment — Page   2   of   6
CASE NUMBER:      CR-S-99-309-KJD(LRL)

## IMPRISONMENT

X    The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **TIME SERVED**.

X    The court makes the following recommendations to the Bureau of Prisons:
credit for time served.

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a ☐ p.m.  on _____ .

    ☐   as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

    Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____

                        UNITED STATES MARSHAL

By _____

                        Deputy U.S. Marshal

AO 245B    (8/96)  Sheet 3—Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:       ATEF SALAMI NEMER HIRCHEDD
CASE NUMBER:    CR-S-99-309-KJD(LRL)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ___N/A___

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994*:

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐   The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐   The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B   (8/96)  Sheet 5, Part A—Criminal Monetary Penalties

|  | Judgment — Page | 4 | of | 6 |

DEFENDANT:    ATEF SALAMI NEMER HIRCHEDD
CASE NUMBER:   CR-S-99-309-KJD(LRL)

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on on Sheet 5, Part B.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $  100.00 | $  10,000.00 | $  3,400.00 joint & several |

with co-defendants Kamilo Yuseff Mousali and Orlando Sanchez Medina.

☐   If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . . . . . . .   $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of $   $ _____ .

The defendant shall pay interest on any fine more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐   The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☐   The interest requirement is waived.

   ☐   The interest requirement is modified as follows:

## RESTITUTION

☐   The determination of restitution is deferred until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

X   The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| Mirage Hotel and Casino | 3,400.00 | 3,400.00 | |
| | | | |
| Totals: | $ _____ | $ _____ | |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B    (8/96)  Sheet 5, Part B—Criminal Mo.    y Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:        ATEF SALAMI NEMER HIRCHEDD
CASE NUMBER:      CR-S-99-309-KJD(LRL)

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution;
(5) interest;  (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A       In full immediately; or

B    X    $ _10,100_____    immediately, balance due (in accordance with C, D, or E); or

C    X    not later than      _30 DAYS FROM THIS DATE_____    ; or

D    ☐    in installments to commence _____ days after the date of this judgment.  In the event the entire amount of criminal
          monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue
          collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E    ☐    in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of
          _____ year(s) to commence _____ days after the date of this judgment.

The defendant will be credited for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:
Restitution is to be paid from the lawful U.S. currency seized by United States Secret Service with the remainder of the seized money
to be returned to defendants.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of
imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty
payments, except those made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be made as
directed by the court, the probation officer, or the United States attorney.

AO 24 B    (8/96)  Sheet 6—Statement of Reasor

DEFENDANT:        ATEF SALAMI NEMER HIRCHEDD
CASE NUMBER:      CR-S-99-309-KJD(LRL)

## STATEMENT OF REASONS

The court adopts the factual findings and guideline application in the presentence report.

### OR

☐   The court adopts the factual finding and guideline application in the presentence report except (see attachment, if necessary):

## Guideline Range Determined by the Court:

Total Offense Level:        8

Criminal History Category:        I

Imprisonment Range:        0        to        6        months

Supervised Release Range:        3        to        3        years

Fine Range: $ _____  to  $ _____

☐  Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $ _____

☐   Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐   For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐   Partial restitution is ordered for the following reason(s):

☐  The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

### OR

☐  The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons:

### OR

☐  The sentence departs from the guideline range:

☐   upon motion of the government, as a result of defendant's substantial assistance

☐   for the following specific reason(s):

I hereby attest and certify on *10/27/00* that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA

By _____ Deputy

# EXHIBIT E

# EXHIBIT E

### DECLARATION OF DON CHAIREZ, ESQ.

I, Don Chairez, Esq., hereby declare as follows:

1.  I am over the age of 18 and am mentally competent to testify.  I have personal knowledge of the facts stated herein, except where stated upon information and belief, and as to facts stated upon information and belief, I believe them to be true.  If called upon to testify as to the matters stated herein, I could and would do so.

2.  I am an attorney duly licensed to practice law in the States of Nevada and California.

3.  I practice primarily in the area of immigration law.

4.  I make this Declaration in support of Atef Salami Nemer Hirchedd's Amended Petition for Writ of Error *Coram Nobis* in the matter entitled *United States of America v. Atef Salami Nemer Hirchedd,* Case No. 2:99-cr-309-KJD.

5.  In or around May 2012, Mr. Nemer retained my services as an immigration attorney to assist him with his immigration status.

6.  Mr. Nemer explained to me that his prior criminal attorney, Kirk Kennedy, Esq., had affirmatively misadvised him regarding the adverse immigration consequences associated with his guilty plea in the above-entitled matter to the offense of Conspiracy to Possess and Pass Counterfeit Obligations of the United Sates in violation of 18 U.S.C. § 371, in that Mr. Kennedy had provided him with affirmative erroneous advice and assurance that his guilty plea to that offense would not adversely impact his immigration status or ability to visit the United States, whereas, in truth and in fact, American immigration officials deem that offense to be a crime involving moral turpitude, conviction of which subjects Mr. Nemer to exclusion from the United States.

7.  Mr. Nemer informed me that, notwithstanding his conviction in the above-entitled matter, on or about July 31, 2001, he had obtained a ten (10) year visa to enter the United States from the United States Embassy in Caracas, Venezuela, and that, notwithstanding his conviction, during the pendency of that visa, he had traveled to the United States, without incident, on approximately 100 separate occasions, but that when he attempted to renew his visa on or about

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

1 of 3

October 26, 2011, he was denied renewal, and was informed – for the first time – by immigration authorities that he was ineligible for admission to the United States because his conviction in the above-entitled matter was deemed by American immigration authorities to involve a crime of moral turpitude.

8.  I did not advise Mr. Nemer of the availability of an application for *coram nobis* relief from his underlying conviction under such circumstances and on those grounds or recommend that he promptly pursue a petition for such judicial relief.

9.  Instead, I advised Mr. Nemer to pursue administrative relief by seeking a "waiver" of his inadmissible status, which would allow him to enter and continue to conduct business in the United States, by filing an I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the American Embassy in Caracas, Venezuela.

10. I believed that filing an I-192 Application for Advance Permission to Enter as Non Immigrant would offer Mr. Nemer a quicker, easier solution to enter into the United States.

11. On or about June 27, 2012, I filed an I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the Caracas Embassy in Caracas, Venezuela on behalf of Mr. Nemer.

12. Months passed and neither Mr. Nemer nor I received any response to the waiver application from the Caracas Embassy.

13. Concerned about Mr. Nemer's inability to travel to the United States and its effect on his livelihood, I re-filed the I-192 Application for Advance Permission to Enter as Non Immigrant on or about March 12, 2013.

14. On or about June 13, 2013, the application was granted and Mr. Nemer was provided a visa to enter the United States for a period of approximately eleven (11) months, which expired on May 9, 2014.

15. On or about September 12, 2014, on behalf of Mr. Nemer, I again filed another I-192 Application for Advance Permission to Enter as Non Immigrant, pursuant to 212(d)(3)(A)(ii) of the Immigration and Nationality Act with the Caracas Embassy in Caracas, Venezuela.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000

16. On or about October 10, 2015, that application for waiver was likewise granted, and Mr. Nemer was issued a two (2) year visa to enter the United States.

17. Mr. Nemer expressed great frustration with the uncertainty and inconvenience associated with the administrative waiver process, and I thereupon advised him for the first time of the availability of the judicial *coram nobis* process whereby he could attack his underlying conviction based on Mr. Kennedy having affirmatively misled him regarding the adverse immigration consequences of his guilty plea, and Mr. Nemer immediately retained me to file the appropriate petition seeking that relief.

18. On November 29, 2015, I filed a Petition for Writ of Error *Coram Nobis* in this Court on behalf of Mr. Nemer assigning such grounds for relief.

19. However, I erroneously filed the petition under a new (civil) case number rather than in the above-entitled criminal case.

20. I did not thereafter correctly file the petition under the appropriate case number in the above-entitled criminal case until April 25, 2016.

21. However, I failed to serve the government with the petition, and as a result, the petition has lain dormant for eighteen (18) months without response or proceedings thereon.

22. I fully recognize that instead of seeking administrative waiver applications, I should have immediately advised Mr. Nemer to promptly file a Petition for Writ of Error *Coram Nobis* to correct Mr. Kennedy's erroneous advice and set aside Mr. Nemer's conviction.

I declare under penalty of perjury under the law of the state of Nevada that the above information is true and correct.

Executed on this 20th day of October, 2017.

_____
Don Chairez, Esq.

Gentile Cristalli
Miller Armeni Savarese
Attorneys At Law
410 S. Rampart Blvd. #420
Las Vegas, Nevada 89145
(702) 880-0000