UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:99-cr-309-KJD |
| Plaintiff, | **ORDER** |
| v. | |
| ATEF SALAMI NEMER HIRCHEDD, | |
| Defendant. | |

Before the Court is Defendant Atef Salami Nemer Hirchedd's Amended Petition for Writ of Error *Coram Nobis* (#76) to which the Government responded (#79), and Mr. Nemer replied (#80). Mr. Nemer asks the Court to vacate his eighteen-year-old conviction for conspiracy to possess and pass counterfeit American currency. He claims his defense attorney's failure to adequately advise him of the immigration consequences of his guilty plea is a fundamental error that renders his conviction unconstitutional. However, for the reasons listed below, Mr. Nemer has failed to demonstrate a valid reason for the four-year delay between discovering these adverse immigration consequences and filing this petition. And even if Mr. Nemer could show a valid reason for his delay, his claim would be barred by laches. Therefore, the Court denies his petition.

I.  **Background**

The relevant factual and procedural history in this case breaks down into three distinct periods. The first relevant time period encompasses Mr. Nemer's arrest and pre-trial proceedings and culminates in Mr. Nemer's voluntary guilty plea. During this time, criminal defense attorney Kirk Kennedy represented Mr. Nemer. The next relevant time period spans the ten years immediately following Mr. Nemer's guilty plea. During this period, Mr. Nemer—a citizen and resident of Venezuela—applied for and received a ten-year travel visa allowing him unimpeded

entry to the United States. When that visa expired, the U.S. Embassy refused to reissue a subsequent travel visa because of Mr. Nemer's conviction in this case. Mr. Nemer retained attorney Don Chairez to challenge that denial. The final relevant period is the four-year period after Mr. Nemer learned that he could attack his conviction through *coram nobis* relief. During this period, Mr. Nemer retained his current counsel and sought to vacate his conviction to avoid future immigration interference.

### A. Mr. Nemer's Underlying Offense and Pre-Trial Proceedings

In July of 1999, Mr. Nemer visited Las Vegas with his wife and various associates. While at the Mirage Hotel, casino officials observed Mr. Nemer and three other men exchanging counterfeit currency for legitimate currency using the casino's slot machines. Mr. Nemer and the three other men fed counterfeit bills into slot machines, which accepted the bills and credited the deposits. The men immediately cashed out without playing the slots. When cashed out, the machines converted the counterfeit bills into Mirage Hotel tokens, which the men exchanged for authentic American currency. Through this process Mr. Nemer exchanged currency he knew to be counterfeit thereby defrauding the Mirage and violating 18 U.S.C. § 371. Mr. Nemer was arrested, and in a subsequent search police discovered over $3,000 of counterfeit currency on Mr. Nemer's person and in his hotel room. The following month, the grand jury returned a two-count indictment against Mr. Nemer for conspiracy to pass counterfeit obligations and for the necessary forfeiture allegation.

Mr. Nemer retained criminal defense attorney Kirk Kennedy to represent him, and the two prepared to try his case. Prior to trial, the Government offered Mr. Nemer a plea deal. According to the proposed agreement, Mr. Nemer would plead guilty to conspiracy to possess and pass counterfeit currency. In return, Mr. Nemer would avoid jail time, pay a $10,000 fine, and pay restitution to the Mirage Hotel. Mr. Nemer was concerned about the negative effect the indictment would have on his ability to travel to the United States and asked Mr. Kennedy whether he would suffer any immigration consequences after pleading guilty. Mr. Kennedy assured Mr. Nemer that his guilty plea would have no effect on his immigration status. And on October 24, 2000, Mr. Nemer pleaded guilty according to the agreement. He waived the

presentencing process and was sentenced the same day.

### B. Mr. Nemer's Visa Interruption and Initial Petition for *Coram Nobis* Relief

Shortly after Mr. Nemer's plea and conviction, he applied for and received a ten-year travel visa that allowed him entry to the United States. Over the span of those ten years, Mr. Nemer entered the United States several times for personal and professional business. When that visa expired in October of 2011, Mr. Nemer filed the necessary renewal paperwork with the U.S. Embassy in Caracas, Venezuela. Although the Embassy had approved his last visa notwithstanding his conviction, it denied his 2011 renewal request. Mr. Nemer then learned that his conviction in this case was deemed a crime of moral turpitude rendering him inadmissible to the United States.

Mr. Nemer retained immigration attorney Don Chairez to challenge his visa denial. Mr. Chairez did not immediately inform Mr. Nemer of the availability of *coram nobis* relief. Rather, he advised Mr. Nemer to pursue an administrative remedy and filed a waiver request with the United States Embassy in Venezuela. A waiver—if approved—would allow Mr. Nemer to secure a travel visa despite his underlying conviction. Mr. Nemer filed his first waiver request in June of 2012. The embassy did not immediately act on the request. And eight months later, Mr. Nemer refiled the waiver request. In June of 2013, the embassy approved the waiver request and granted Mr. Nemer a visa to enter the United States for eleven months. At the end of the eleven months, Mr. Nemer followed the same process and received a second waiver and travel visa, which allowed him entry for two more years and expired in October of 2017.

Mr. Nemer expressed to Mr. Chairez his displeasure with the uncertainty of the waiver process. Mr. Chairez then informed Mr. Nemer of the availability of *coram nobis* relief as a permanent remedy for his visa concerns. In November of 2015, Mr. Chairez filed a Petition for a Writ of Error *Coram Nobis* (#75) on Mr. Nemer's behalf. However, the petition was filed under an incorrect case number and sat dormant until the Government moved to correct the docketing error. The Court then routed the petition to the proper docket.

### C. Mr. Nemer's Amended Petition for *Coram Nobis* Relief

Before the Government responded to Mr. Nemer's first petition for *coram nobis* relief, he

retained his current counsel who filed an amended petition for relief. The amended petition is accompanied by supporting declarations from Mr. Nemer, attorney Kirk Kennedy, and attorney Don Chairez and contains many of the same factual allegations as the first petition. The gist of Mr. Nemer's petition is that he received ineffective assistance of counsel when Mr. Kennedy affirmatively misrepresented the immigration consequences of his guilty plea. He claims that had he known that his conviction for passing counterfeit currency would be classified a crime of moral turpitude, thereby excluding him from reentry, he would have rejected the plea agreement and elected to try his case. Mr. Chairez, he claims, also rendered ineffective assistance by electing to pursue a waiver of inadmissibility rather than inform Mr. Nemer of the availability of *coram nobis* relief. Finally, the amended petition claims that any delay in bringing the petition is excusable based on the ten-year travel visa Mr. Nemer received after his conviction and the failure of Mr. Chairez to pursue relief.

In response, the Government argues that Mr. Nemer has failed to demonstrate a valid reason for waiting fifteen years from the date of his conviction to bring his petition. And even if he shows valid reasons for the delay, it argues, laches bars the petition because the Government would suffer severe prejudice if forced to retry the case now. Such a delay would make it nearly impossible to reassemble the prosecution team and recover evidence from Mr. Nemer's underlying offense. As a result, the Government argues, the Court should deny relief.

**II.     Legal Standard**

A writ of error c*oram nobis* is an extraordinary remedy that allows a court to correct fundamental errors that led to a criminal conviction. Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002). The Court has authority to issue the writ under to the All Writs Act. See 28 U.S.C. § 1651(a); United States v. Morgan, 346 U.S. 502, 506–07 (1954). Its purpose is to correct unlawful or unconstitutional criminal convictions that were based upon factual errors or "egregious legal errors." United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989). A petitioner may only seek *coram nobis* relief when there are no other remedies available. And so, petitioners generally seek such relief when they are no longer in custody. Estate of McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995).

*Coram nobis* relief requires four elements. The petitioner must show: (1) that a more usual remedy is not available; (2); that the conviction's adverse consequences are sufficient to satisfy the case and controversy requirement under Article III; (3) that the error is of the most fundamental character; and (4) that the petitioner has a valid reason for not attacking the conviction earlier. Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987). These requirements are conjunctive, and failure to satisfy any one is fatal to a petitioner's overall claim. United States v. McClelland, 941 F.2d 591, 604 (9th Cir. 1987). Indeed, *coram nobis* relief is "highly unusual" and is only available to "correct grave injustices" where no other remedy is available. United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007).

Finally, a petition for *coram nobis* is subject to the equitable doctrine of laches. Telink v. United States, 24 F.3d 42, 45 (9th Cir. 1994). Unlike statutes of limitation, which rigidly limit the timeframe within which a petitioner may bring a claim, laches bars a petitioner's claim when his delay would cause inequity to a responding party. Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946). Laches bars *coram nobis* relief when the petitioner's delay would prejudice the Government's ability to retry the case. Telink, 24 F.3d at 47. The burden is on the Government to demonstrate a prima facie case of prejudice. If the Government makes a prima facie showing, the burden shifts to the petitioner to demonstrate either: (1) that the petitioner exercised reasonable diligence in attacking his conviction or (2) that the Government was not actually prejudiced by the delay. Id. at 48.

**III.     Analysis**

Of the four elements required for *coram nobis* relief, the Government only disputes whether Mr. Nemer has shown valid reasons for not attacking his conviction earlier. Alternatively, the Government argues that even if Mr. Nemer satisfied each of the four Hirabayashi elements, he delayed too long in bringing his claim and that laches would bar relief.

**A. The Elements of a Petition for *Coram Nobis* Relief**

*1. A More Usual Remedy is not Available*

*Coram nobis* relief is the only relief available to Mr. Nemer because he is no longer in custody. Generally, a petitioner attacks the validity of his underlying conviction through the

applicable habeas corpus statute. See Matus-Leva, 287 F.3d at 761 (while a petitioner is in custody, the "more usual" remedy is to seek relief under 28 U.S.C. § 2255). Upon release from custody, however, habeas relief is no longer available. United States v. Kwan, 407 F.3d 1005, 1012 (9th Cir. 2005), abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356 (2010). Mr. Nemer has not been in custody since his arrest in 1999. Because Mr. Nemer could only seek habeas relief from behind bars, *coram nobis* relief is the only way he may attack his conviction. He has therefore shown that a more usual remedy is not available.

*2. Sufficient Injury for Standing under Article III*

Mr. Nemer's conviction for a crime of moral turpitude rendered him inadmissible for reentry into the United States. That change in immigration status, he claims, is sufficient to satisfy the case-or-controversy requirement under Article III. The Government does not dispute this. Notwithstanding the Government's non-opposition, the Court must still determine whether Mr. Nemer has standing to seek relief and may do so on its own. See Pritikin v. Dept. of Energy, 254 F.3d 791, 796 (9th Cir. 2001). A petitioner seeking *coram nobis* relief is not exempt from Article III standing requirements. Byrnes v. United States, 408 F.2d 599, 602 (9th Cir. 1969); see also Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (a petitioner must still suffer "legal consequences from his conviction" that will be remedied through the writ). In the immigration context, a sufficient case or controversy exists when a lawful resident's immigration status is revoked and he becomes removeable. See Padilla v. Kentucky, 559 U.S. 356 (2010); Kwan, 407 F.3d at 1014; Rianto v. United States, Nos. 1:11-cv-0217AWI, 1:01-cr-5063AWL, 2012 WL 591507 (E.D. Cal. Feb. 22, 2012).

Mr. Nemer argues that the change in his admissibility status from admissible to inadmissible following his conviction is comparable to the changes in immigration status in Padilla, Kwan, and Rianto. In each of those cases, the petitioner was a lawful permanent resident at the time of their conviction. Their respective convictions rendered each petitioner removeable, which prompted their petitions for *coram nobis* relief. Mr. Nemer claims that he, like those petitioners, has shown a sufficient injury to confer Article III standing. To be clear, Mr. Nemer differs from Padilla, Kwan, and Rianto. Each of those petitioners was a lawful permanent

resident at the time of their conviction. They had completed the necessary immigration process and enjoyed permanent residence in the United States barring specific circumstances. At the time of Mr. Nemer's conviction to the present, he was foreign national who was subject to regular visa-renewal requirements. Unlike the petitioners in Padilla, Kwan, and Rianto, Mr. Nemer was beholden to regular visa renewals and had no guarantee that he would remain admissible.

These differences notwithstanding, the Court finds Mr. Nemer has shown a sufficient injury to confer Article III standing. Standing requires a concrete and particularized injury that can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Here, Mr. Nemer's conviction classified him as inadmissible and subjected him to additional immigration requirements and greater scrutiny that he would not have experienced otherwise. While Mr. Nemer's entry into the United States was never guaranteed, that he must now apply for an administrative waiver each time his visa expires is a sufficient injury to have standing to bring this petition.

### 3. Error of a Fundamental Character

*Coram nobis* relief is only available to correct errors of a fundamental character. Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002). Ineffective assistance of counsel is the paradigmatic fundamental error. See Kwan, 407 F.3d at 1014. Claims of ineffective assistance of counsel turn on the two factors laid out in Strickland v. Washington. 466 U.S. 668 (1984). Counsel's performance is ineffective if: (1) it falls below an objective standard of reasonableness, and (2) it creates a reasonable probability that the result of the proceeding would be different but for counsel's deficiency. Id. at 688. Like here, where counsel has advised a client to accept a plea rather than go to trial, the Court does not consider whether the result at trial would have been different. Lee v. United States, ___ U.S. ___, 137 S.Ct. 1958, 1965 (2017). Rather, the Court considers whether the petitioner was prejudiced by the "denial of the entire judicial proceeding . . . to which he had a right." Id. (internal quotations omitted).

Mr. Nemer's ineffective assistance of counsel claim arises out of his representation by Mr. Kennedy during his pretrial and plea agreement proceedings. He claims that Mr. Kennedy affirmatively misadvised him about the adverse immigration consequences attached to his guilty

plea and subsequent conviction. Without performing any due diligence, Mr. Kennedy assured Mr. Nemer that his guilty plea would have no adverse effect on his immigration status. Relying upon that assurance, Mr. Nemer accepted the Government's plea offer, pleaded guilty, and sacrificed his right to a trial. In reality, Mr. Nemer's guilty plea rendered him inadmissible to the United States. He argues that had he known that his plea would make him inadmissible, he would have sought a more favorable arrangement or proceeded to trial.

The Government contends that the Court need not reach whether Mr. Nemer's conviction rests upon a fundamental error because he has not demonstrated a valid reason for delaying his conviction. Overcoming Strickland's "high bar is never an easy task." Padilla, 559 U.S. at 371. And the Court should not disturb an otherwise valid plea based on "post-hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee, 137 S.Ct. at 1967. On these facts, however, the Court finds that Mr. Kennedy's affirmative misrepresentations fell below an objective standard of counsel and that there is a reasonable probability that had Mr. Nemer known of these adverse immigration consequences, he would not have accepted this plea agreement and would have elected to go to trial.

Mr. Kennedy's affirmative misrepresentations of the guilty plea's adverse immigration consequences satisfy the first Strickland prong. Before Padilla, counsel's mere failure to advise a criminal defendant of possible immigration consequences accompanying a guilty plea was not sufficient to show ineffective assistance. See Padilla, 559 U.S. at 370–71. Padilla does not apply retroactively to Mr. Nemer's criminal case. See Chaidez v. United States, 568 U.S. 342, 344 (2013). But Mr. Nemer has shown more than counsel's mere failure to advise him of the potential adverse immigration consequences. He demonstrated that Mr. Kennedy affirmatively assured him that there would be no adverse consequences to his immigration status. See ECF No. 76, Exh. C, at 2 ¶ 12 (Kennedy Declaration). And Mr. Kennedy did so without researching the issue or consulting an immigration attorney. Id. This affirmative misadvice satisfies the first Strickland prong.

Next, it is reasonable that Mr. Nemer would have rejected the plea agreement and proceeded to trial had he known his plea would render him inadmissible. Given the importance

of Mr. Nemer's immigration status to his economic interests in the United States, it is reasonable that he would not have accepted a plea that would undoubtedly affect his ability to enter the country. Prior to his arrest and for ten years thereafter, Mr. Nemer regularly traveled to the United States. He purchased and maintained millions of dollars' worth of real estate in the United States. He purchased automobiles in Miami for resale in Venezuela. He purchased multiple airplanes in the United States on behalf of a Venezuelan air-travel business that he owned. In short, Mr. Nemer's freedom to travel to and from the United States was very valuable to him. He states as much in his declaration. He was "gravely concerned about the negative impact that the Indictment would have on [his] immigration status and ability to travel to the United States." ECF No. 76, Exh. A, at 2 ¶ 16 (Nemer Declaration). And "as an international businessman, who regularly travels to the United States, it was critical [sic] me that the disposition of [the] Indictment have no adverse impact on my immigration status." Id. at ¶ 17. Given his extensive interest in the United States, it is reasonable that he would have rejected this plea agreement had he known that it would make him inadmissible. Accordingly, Mr. Nemer has demonstrated both Strickland prongs and has shown a fundamental error.

*4. A Valid Reason Exists for not Attacking the Conviction Earlier*

Despite Mr. Kennedy's fundamental error, Mr. Nemer has not shown a valid reason for failing to attack this conviction earlier. *Coram nobis* relief is not subject to a specific statute of limitations because it is a collateral attack on the petitioner's underlying conviction. Telink, 24 F.3d at 45. However, a petitioner who delays attacking his underlying conviction must demonstrate a valid reason for that delay. Morgan, 346 U.S. at 512. There is no test to determine whether a petitioner's delay was due to a "valid reason." See Kwan, 407 F.3d at 1013–14. Courts have denied *coram nobis* relief where a petitioner has delayed for no reason whatsoever, where the petitioner's delay has prejudiced the respondent, and where the petitioner seeks to abuse the writ. See Maghe v. United States, 710 F.2d 503, 503–04 (9th Cir. 1983); Klein v. United States, 880 F.2d 250, 254 (10th Cir. 1989). On the other hand, Courts have granted *coram nobis* relief when the applicable law governing an underlying conviction changed and became retroactive. Walgren, 885 F.2d at 1421. They have granted relief when new evidence was discovered that

could not have been discovered earlier. Hirabayashi, 828 F.2d at 605. And they have granted relief where a petitioner was advised by counsel not to file a habeas petition while in custody. Kwan, 407 F.3d at 1013.

Mr. Nemer contends that Kwan controls this case because both he and Mr. Kwan were persuaded to seek alternative immigration remedies rather than immediately pursue *coram nobis* relief. Mr. Kwan—a legal permanent resident—pleaded guilty to two counts of bank fraud. Id. at 1008. Because Mr. Kwan was not an American citizen, he was concerned about the immigration consequences associated with such a conviction. Id. But his attorney assured him that, if he pleaded guilty to bank fraud, deportation "was not a serious possibility.' Id. Relying on that assurance, Mr. Kwan pleaded guilty and was sentenced to one year and one day in prison. Id. at 1009. Nearly a year later, Immigration and Naturalization Services (INS) issued Mr. Kwan a notice to appear stating that he was removeable based on his bank fraud conviction, which the INS deemed an aggravated felony. Id.[1] Mr. Kwan immediately hired an immigration attorney and challenged removal arguing that his conviction did not qualify as an aggravated felony. Id. He prevailed initially. But three years later, INS issued a second notice and again stated that he was removeable as an aggravated felon. Id. The second immigration judge found that Mr. Kwan's offense was an aggravated felony and ordered him removed. At that point, Mr. Kwan petitioned for *coram nobis* relief. Id.

The Ninth Circuit determined that Mr. Kwan had a valid reason for not attacking his conviction earlier because he had no reason to know his trial counsel was deficient until the second immigration judge found he was removeable. Id. at 1014. It took the immigration court three years to determine Mr. Kwan was removeable. Until then, he had no "reason to conclude that his criminal defense counsel had in fact erred and affirmatively misled him." Id. at 1014. And when Mr. Kwan finally learned he was removeable—and that his trial counsel's advice was flawed—he immediately petitioned for *coram nobis* relief.

---

[1] At the time of Mr. Kwan's conviction, a legal permanent resident convicted of an aggravated felony under was subject to mandatory removal. 8 U.S.C. § 1227(a)(2)(iii). Mr. Kwan's bank fraud conviction was arguably an aggravated felony because it was a theft crime for which he was sentenced to more than one year. See 8 U.S.C. § 1101(a)(43)(G).

Mr. Nemer, on the other hand, waited four years to file this petition after he discovered that Mr. Kennedy's counsel was incorrect. He argues that his delay is excusable because he relied upon his immigration counsel's advice to seek an immigration waiver rather than attack his underlying conviction. He claims that Kwan permits such delays where counsel fails to properly advise a petitioner about the availability of *coram nobis* relief. His interpretation, however, overlooks the crucial difference between he and Mr. Kwan. When Mr. Kwan discovered the adverse immigration consequences of his conviction, he petitioned for *coram nobis* relief immediately. Mr. Kwan pursued an alternate remedy *before* he knew of the adverse immigration consequences. Mr. Nemer pursued alternate remedies for four years *despite* understanding the consequences of his underlying conviction.

Mr. Nemer admits that he discovered the immigration consequences of his conviction when the U.S. Embassy denied his visa renewal in 2011. It was then that Mr. Nemer "was informed—for the first time—by immigration authorities that [he] was ineligible for admission to the United States because of [his] conviction in this case." ECF No. 76, Exh. A, at 3–4. Rather than attack his conviction, Mr. Nemer pursued alternate remedies to ensure he could continue to enter the United States. The following is the timeline of events after Mr. Nemer discovered his ineligibility:

- October 2011: Mr. Nemer's visa renewal is denied. He learns he is inadmissible because of his 2000 conviction. He retains immigration attorney Don Chairez;
- June 2012: Mr. Chairez files a waiver request with immigration officials to seek reentry on behalf of Mr. Nemer but does not inform him of the availability of a *coram nobis* petition;
- March 2012: After the Embassy fails to grant or deny Mr. Nemer's first waiver request, Mr. Chairez files a second waiver request;
- June 2013: Mr. Nemer's second waiver request is granted, and he receives a temporary visa that is valid for eleven months;
- September 2014: At the expiration of Mr. Nemer's eleven-month travel visa, Mr. Chairez files his third waiver application;
- October 2015: The third waiver request is granted, and Mr. Nemer is issued a two-year visa;
- November 29, 2015: Mr. Chairez files Mr. Nemer's first petition for *coram nobis* relief.

Mr. Nemer had ample opportunity between October of 2011 and November of 2015 to attack his conviction but instead pursued an immigration remedy. And the U.S. Embassy continually approved his waiver applications, which resulted in Mr. Nemer's continued admissibility. In addition to approving these waiver requests, Mr. Nemer's subsequent travel visas have increased in duration at each approval. Thus, Mr. Nemer's conviction has not barred his access to the United States. Admittedly, like Kwan, Mr. Nemer immediately retained immigration counsel to contest his inadmissibility. And, like Kwan, his counsel—Mr. Chairez—pursued a remedy that addressed Mr. Nemer's immediate immigration need but did not attack his underlying conviction. However, Mr. Nemer waited four years to challenge his conviction whereas Mr. Kwan brought his petition almost immediately after learning he was removeable.

To explain his delay, Mr. Nemer claims that Mr. Chairez failed to advise him of the availability of *coram nobis* relief until 2015, and when Mr. Chairez finally informed him of the petition, Mr. Nemer immediately retained him to file it. This may be true, but even if Mr. Chairez knew that Mr. Nemer received poor counsel from Mr. Kennedy, his decision to pursue immediate immigration relief through administrative waiver is not a valid reason for delaying the *coram nobis* petition. Under these circumstances, pursuing an administrative remedy was reasonable because it addressed Mr. Nemer's immediate immigration need, namely, his admissibility into the United States. Additionally, Mr. Nemer's first *coram nobis* petition suggests that he was aware of the availability of *coram nobis* relief much earlier than he claims. In his first petition for relief, Mr. Nemer claims that he "could not file [his] motion earlier, as he has been waiting eighteen months for the right to travel to Las Vegas to be able to review his file and meet with his lawyer in person." ECF No. 75, at 9 ¶ 27. That statement belies Mr. Nemer's contention that he sought *coram nobis* relief immediately after learning of its availability.[2]

Overall, Mr. Nemer has failed to demonstrate a valid reason for delaying this petition for

---

[2] Mr. Nemer and Mr. Chairez each submitted declarations with the amended petition. In those declarations they claim that after Mr. Chairez filed Mr. Nemer's third waiver request in October of 2015, "Mr. Nemer expressed great frustration with the administrative waiver process, and [Mr. Chairez] thereupon advised him for the first time of the availability of the judicial *coram nobis* process whereby he could attack his underlying conviction," and that "Mr. Nemer immediately retained [Mr. Chairez] to file the appropriate motion seeking that relief." ECF No. 76, Exh. E, at 3 ¶ 17.

four years after discovering the adverse consequences of his conviction. Mr. Nemer pursued alternative immigration relief, which the U.S. Embassy continually granted. This relief preserved Mr. Nemer's admissibility despite his underlying conviction. Therefore, Mr. Nemer has not shown a valid reason for delaying this petition.

### B. Even if Mr. Nemer Could Show a Valid Reason for His Delay, Laches Would Bar His Petition

Mr. Nemer has not demonstrated a valid reason for delaying this petition for four years after he discovered the immigration consequences associated with his guilty plea and conviction. However, even if he could justify his delay, the Government would suffer prejudice if the Court granted this petition. As a result, Mr. Nemer's petition would be barred by laches.

Laches does not replace the last Hirabayashi factor (valid reason for delay). United States v. Riedl, 496 F.3d 1003, 1008 (9th Cir. 2007). Rather, it is a supplemental defense that the Government may assert after a petitioner has demonstrated each of the four factors for *coram nobis* relief. Id. The Court employs a burden shifting analysis to determine whether a *coram nobis* petition is barred by laches. The initial burden is on the petitioner to demonstrate each of the four Hirabayashi factors. If the Government asserts laches, it bears the burden to make a prima facia case of prejudice. Id. If the Government makes such a showing, the burden shifts back to the petitioner to show either: (1) that the Government was not actually prejudiced by the delay or (2) that the petitioner exercised reasonable diligence in filing his claim. Telink v. United States, 24 F.3d 42, 47–48 (9th Cir. 1994).

In evaluating prejudice, the Court considers both the effect of the delay on the Government's ability to respond to the petition and the Government's ability to retry the case if the petition were granted. Id. at 48. Several factors aid this analysis, including: (1) the duration of time that has elapsed between the original offense and a potential retrial; (2) the witnesses' memories of the event; (3) the witnesses' availability; and (4) the availability of and the Government's access to relevant evidence. See id.

After considering these factors, the Court determines that the Government would suffer prejudice if required to retry Mr. Nemer. Since the conviction in 2000, the Department of Justice

has archived the records and evidence that would support a retrial. The DOJ record retention policy requires the Government to discard evidence and discovery after a predetermined period of time. That time passed long ago in this case. As a result, much of the Government's case file on Mr. Nemer has been discarded. Proceeding without that evidence would severely disadvantage the Government if it were forced to retry this case. Additionally, it would be nearly impossible to locate the Government's witnesses. And if the Government did manage to locate these witnesses, their testimony would be based upon twenty-year-old memories. That testimony would be dated and unreliable. Accordingly, the Government has made a prima facie case of prejudice.

Because the Government has made a prima facie showing of prejudice, the burden shifts back to Mr. Nemer to demonstrate that either: (1) that the Government would not actually suffer prejudice or (2) that he exercised reasonable diligence in filing his claim. He claims that the Government's alleged prejudice is hypothetical and that it would not suffer actual prejudice if forced to retry this case. That argument is unpersuasive. That the witnesses' memories will have faded over the twenty years that has passed between Mr. Nemer's arrest and his petition for *coram nobis* relief is not a hypothetical concern. Nor is the prejudice that arises from the destruction of evidence and discovery under the DOJ record retention policy. In sum, the Government would suffer substantial prejudice if forced to retry this case using an incomplete case file and witness testimony based on twenty-year-old recollections.

Mr. Nemer also fails to demonstrate reasonable diligence in filing his petition. The basis of Mr. Nemer's reasonable diligence argument is that he has already shown a valid reason for his delay in filing his petition. However, Mr. Nemer's four-year delay in filing demonstrates a lack of due diligence toward his petition. Had Mr. Nemer filed his petition immediately upon discovering the adverse immigration consequences of his conviction, it still would have been difficult for the Government to locate witnesses and prosecute the case. But the additional four-year delay makes retrial next to impossible. Accordingly, Mr. Nemer has not demonstrated reasonable diligence in filing his petition nor has he rebutted the Government's prima facie case of prejudice. Therefore, even if Mr. Nemer could show a valid reason for his delay in filing this

petition, laches would bar relief.

**IV.     Conclusion**

Accordingly, IT IS HEREBY ORDERED that Mr. Nemer's Amended Petition for Writ of Error *Coram Nobis* (#76) is **DENIED**.

Dated this 27th day of November, 2018.

_____
Kent J. Dawson
United States District Judge